IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | |
|---|---|
| Caitlin V. Neal,<br><br>                    Plaintiff,<br><br>v.<br><br>Operators of the Digital Properties Set Forth in Exhibit 1,<br><br>                    Defendants. | Case No: 2:24-cv-00263-GSL-AZ<br><br>Dist. Judge Gretchen S. Lund<br><br>Mag. Judge Abizer Zanzi |

## FIRST AMENDED COMPLAINT

Plaintiff Caitlin V. Neal ("Neal" or "Plaintiff"), by and through her attorneys at ZLATKIN CANN ENTERTAINMENT, for her First Amended Complaint ("FAC") against Defendants Operators of the Digital Properties Set Forth in Exhibit 1 (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

1. This is an action for false endorsement arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq*. ("Lanham Act"), and for knowing, willful, and intentional violations of the Indiana statute against misappropriation of rights of publicity, Ind. Code 32-36-1-0.2, *et seq*.

## THE PARTIES

2. Neal is an individual who currently resides in Los Angeles, California.

3. Upon information and belief, Defendants are e-commerce merchant(s) based in China. Defendants control and operate the websites located at the URLs set forth in Exhibit 1 of this FAC (each, together with all subpages, a "Point-of-Sale Site" and, collectively, "Point-of-Sale Sites") and the social media pages set forth in Exhibit 1 of this FAC (collectively, "Defendants' Socials"). After purchase of products through the Point-of-Sale Sites using a U.S.-based money transfer platform, additional information has become apparent about Defendants' domains and identities ("Purchase-Based Evidence"). True and correct annotated screenshots of the Point-of-

Sale Sites, the Defendants' Socials, and Purchase-Based Evidence are attached hereto and incorporated herein as Exhibit 1. True and correct screenshots of the WHOIS records for the Point-of-Sale Sites and other domains believed to be controlled by Defendants are attached hereto and incorporated herein as Exhibit 2. The WHOIS records show that all of the domains controlled by Defendants are registered through the same registrar in Guongdong Province, China.[1]

4.  Defendants share identifiers, such as using identical or slightly modified infringing advertisements, design elements, domain names, and email addresses, establishing a logical relationship between them and suggesting that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

5.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' misappropriation of Plaintiff's identity, as well as to protect unknowing consumers from purchasing Defendants' products over the internet based on confusion as to whether Plaintiff has endorsed Defendants' products.

## JURISDICTION AND VENUE

6.  This Court has original subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, as this is a civil action arising under federal law, namely the Lanham Act. This Court also has original subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1338(a), because the Lanham Act relates to trademarks. This Court also has original subject matter jurisdiction under 15 U.S.C. § 1121(a).

---

[1] The names of the Point-of-Sale Sites and other information that may be used to identify Defendants are being filed under seal. Plaintiff seeks leave to do so because Plaintiff intends to move for a temporary restraining order, through which the Court would impose a temporary asset freeze with respect to Defendants' money transfer platform(s). In the absence of a temporary asset freeze, Plaintiff believes that Defendants would obtain advance notice of this suit and would transfer assets abroad, thereby frustrating this Court's future rulings. Plaintiff also intends to seek expedited discovery, through which Plaintiff would receive additional information from third-party online marketplace platform(s) to further help identify Defendants.

7. This Court further has jurisdiction to grant injunctive relief under 15 U.S.C. § 1116(a).

8. The pendent state law claim is so related to the federal claim that it forms part of the same case or controversy pursuant to Article III of the Constitution. The Court therefore has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants directly targets its business activities toward consumers in the United States, including Indiana and this Judicial District. Defendants reach out to do business with residents of Indiana and this Judicial District by operating one or more commercial, fully interactive website(s) (including, at a minimum, the Point-of-Sale Sites) through which residents of Indiana and this Judicial District can purchase products being offered and sold by Defendants, after linking from advertisements featuring Plaintiff's image, photograph, likeness, and distinctive appearance. Defendants have targeted sales from residents of Indiana and this Judicial District by operating the Point-of-Sale Sites that accept payment in U.S. dollars and offer shipping to addresses within Indiana and this Judicial District for products advertised using Plaintiff's image, photograph, and likeness. Defendants have committed and are committing tortious acts in Indiana and this Judicial District, are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Indiana.

## FACTUAL ALLEGATIONS

10. Neal is a renowned sexologist and sexual health and relationship coach.

11. As part of the process of building her credentials, Neal attended and obtained degrees from various institutions, including a Bachelor of Arts degree from DePauw University in

Greencastle, Indiana and a Master of Public Health degree from Indiana University in Bloomington. Neal was also a doctoral student at the University of Texas School of Public Health and a graduate assistant at the University of Texas Health Science Center at Houston.

12. Neal has over the years performed sex-coaching services through her own name (including under the name "Caitlin V") as well as in the form and style of "BPP Coaching, Inc.," which is an Illinois corporation in good standing ("BPP"). BPP controls and operates the website https://caitlinvneal.com/.

### Neal's Personality Has Developed Commercial Value

13. In addition to providing sex-coaching services through BPP, Neal has established several digital properties through third-party social media platforms.

14. Neal established the YouTube Channel accessible at the URL https://www.youtube.com/@CaitlinV ("YouTube Channel"). As of the date of this FAC, the YouTube Channel has over 859,000 subscribers, contains over 860 videos, and has garnered over 140 million views. True and correct screenshots of various webpages of the YouTube Channel are attached hereto and incorporated herein as Exhibit 3.

15. Neal controls and operates the Instagram page accessible at the URL https://www.instagram.com/caitlinvictoriousx/ ("Instagram Page") and the Facebook page accessible at the URL https://www.facebook.com/caitlinvspot ("Facebook Page"). Neal also controls and operates the TikTok page accessible at the URL https://www.tiktok.com/@caitlinvictoriousx_?lang=en ("TikTok Page"), as well as the X account accessible at the URL https://x.com/caitlinvneal ("X Account"). As of the date of this FAC, Neal has over 39,000 followers at both the Instagram Page and the Facebook Page, over 66,300 followers at the TikTok Page, and over 2,850 followers at the X Account. True and correct

screenshots of the Instagram Page, the Facebook Page, the TikTok Page, and the X Account are attached hereto and incorporated herein as Exhibit 4.

16. In 2022, Neal starred as the host of the Discovery Plus reality television show entitled *Good Sex* ("Reality Show"). As part of the Reality Show, Neal provided coaching to real people to help them resolve challenges relating to sex and intimacy that had arisen in their lives. Neal was also featured in the cover story of the Fall 2024 issue of *Sexual Health* magazine ("Cover Story"). True and correct screenshots of the official page for the Reality Show and the online version of the Cover Story are attached hereto and incorporated herein as Exhibit 5.

17. Neal has successfully combined sound advice and entertaining presentation to become a trusted source of information about sexual topics, including a variety of adult-oriented products.

18. Neal has successfully leveraged the followers she has cultivated into opportunities to serve as an ambassador for various brands in the sexual health space, including providers of adult-oriented goods and services.

19. Neal earns her livelihood within the sexual health space, including without limitation through the commercial use of her name, voice, signature, photograph, image, likeness, distinctive appearance, gestures, and mannerisms (collectively, "Personality"), as well as by granting rights to third parties to use her Personality and/or content.

**Defendants Use Neal's Personality Without Consent to Promote Defendants' Products**

20. Defendants sell the products identified on Exhibit 1 ("Defendants' Products").

21. Defendants' Products are adult-oriented wellness products of dubious quality.

22. In July, August, September, and October 2024, Defendants initiated online marketing campaigns for Defendants' Products. As part of the marketing campaigns, Defendants

caused the publication of multiple ads through which internet users may click a button to proceed to order Defendants' Products. At least seventeen of these ads prominently featured aspects of Neal's Personality, including specifically Neal's image, photograph, likeness, and distinctive appearance (such ads featuring Neal, collectively, "Infringing Ads"). The Infringing Ads contained an "Order Now" link in close proximity to Neal's Personality. True and correct screenshots of the Infringing Ads are attached hereto and incorporated herein as Exhibit 6.

23. In all Infringing Ads, clicking on the "Order Now" button adjacent to Neal's Personality redirected users to Defendants' Point-of-Sale Sites.

24. The Infringing Ads and the Point-of-Sale Sites are viewable and accessible within the State of Indiana, and the Point-of-Sale Sites accept payments for Defendants' Products from Indiana residents for shipment to the State of Indiana.

25. Some of Neal's followers have contacted Neal, inquiring whether Neal actually endorses Defendants' Products.

26. Neal does not endorse Defendants' Products, has not consented to the use of her Personality to promote Defendants' Products, and believes that the Infringing Ads contain misleading and/or false information that may harm consumers of Defendants' Products.

**FIRST CLAIM FOR RELIEF**
**False Endorsement Under 15 U.S.C. § 1125(a)(1)(A)**

27. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–26 of this FAC.

28. Neal owns all statutory and common law rights associated with her Personality necessary for endorsement deals, including the right to decide whether to associate any aspects of her Personality with any third party for purposes relating to sponsorship and/or endorsement.

29. Defendants have used distinctive attributes of Neal's Personality without permission by displaying the Infringing Ads with aspects of Neal's Personality.

30. Such unauthorized usage constitutes false or misleading representations of fact to falsely imply the endorsement of Defendants' business and products by Neal.

31. Such unauthorized usage of Neal's Personality is likely to confuse and deceive consumers as to Neal's sponsorship and/or endorsement of Defendants and Defendants' Products. Specifically, the uses of Neal's image, photograph, likeness, and distinctive appearance by Defendants are likely to cause consumers to mistakenly believe that Neal is associated with Defendants or that Neal sponsors or endorses Defendants' Products.

32. As a direct and proximate result of the acts of false endorsement set forth above, Neal has suffered actual damages in an amount to be proven at trial.

33. Defendants' acts have injured Neal's image or reputation by creating a likelihood of confusion about Neal's endorsement and/or approval of Defendants' Products.

34. Defendants' deliberate misrepresentations regarding an association with Neal constitute false endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35. This case is an exceptional case pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
### Violation of the Indiana Right of Publicity Statute, Ind. Code 32-36-1-0.2 *et seq*.

36. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–35 of this FAC.

37. The Infringing Ads are accessible in Indiana, and the Infringing Ads redirect Indiana consumers to the Point-of-Sale Sites, where Indiana consumers may order (and have ordered), Defendants' Products for shipment to Indiana. Furthermore, Defendants have shipped Defendants' Products to Indiana.

38. Neal's Personality has commercial value, as supported by her substantial following across multiple platforms and media, as well as by third parties' engagement of Neal specifically for the purpose of leveraging Neal's Personality.

39. Neither Defendants nor any representative of Defendants has sought or obtained any consent from Neal to use Neal's Personality for commercial purposes (or any other purposes).

40. Here, Defendants have used Neal's Personality (which includes Neal's image, photograph, likeness, and distinctive appearance) without Neal's written consent (or any other type of consent) for the commercial purpose of promoting Defendants' Products and to encourage consumers to purchase Defendants' Products.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

1. On the First Claim for Relief, an award of actual damages in an amount to be proven at trial, pursuant to 15 U.S.C. § 1117(a);

2. On the First Claim for Relief, for the disgorgement of Defendants' profits attributable to the alleged false endorsement or affiliation, in accordance with 15 U.S.C. § 1117(a);

3. On the Second Claim for Relief, pursuant to Ind. Code § 32-36-1-10(1), an award of the greater of (a) statutory damages in the amount of $1,000; or (b) actual damages in an amount to be proven at trial, including profits derived from the unauthorized use of Neal's Personality;

4. On the Second Claim for Relief, pursuant to Ind. Code § 32-36-1-10(2), an award of treble or punitive damages (as Neal may elect) in an amount sufficient to deter unlawful conduct by Defendants in the future, because Defendants' unauthorized uses of Neal's Personality were knowing, willful, and/or intentional;

5. For preliminary and permanent injunctive relief to restrain and enjoin Defendants from using Neal's Personality, pursuant to Ind. Code § 32-36-1-12(2) and 15 U.S.C. § 1116(a);

6. For attorneys' fees, costs, and expenses, in accordance with Ind. Code § 32-36-1-12(1) and 15 U.S.C. § 1117(a); and

7. For such other and further relief as the Court may deem just and proper.

Dated: October 8, 2024

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: ___/s/ Ilya G. Zlatkin___
Ilya G. Zlatkin (Bar No. 37269-45)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorney for Plaintiff Caitlin V. Neal*