IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | |
|---|---|
| Caitlin V. Neal,<br><br>                               Plaintiff,<br><br>v.<br><br>Operators of the Digital Properties Set Forth in Exhibit 1,<br><br>                               Defendants. | Case No: 2:24-cv-00263-GSL-AZ<br><br>Dist. Judge Gretchen S. Lund<br><br>Mag. Judge Abizer Zanzi |

### Declaration of Caitlin V. Neal

I, Caitlin V. Neal, of the City of Los Angeles, California, declare as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, my dealings with respect to various portions of my personality (including, but not limited to, my name, image, likeness, distinctive appearance, and photographs), endorsements, sales, on-line sales, advertising, marketing, and media coverage. I also have knowledge of my investigative efforts with respect to the unauthorized use of various portions of my personality. I make this declaration from matters within my own knowledge unless otherwise stated.

3. After years of study, I became a sexologist and sexual health and relationship coach by profession.

4. Since at least 2015, I have performed sex-coaching services through my own name (including under the name "Caitlin V.") as well as through my company BPP Coaching, Inc., an Illinois corporation ("BPP"), which I incorporated in 2018. As the president of BPP, I have caused BPP

1

to control and operate the website https://caitlinvneal.com, through which BPP engages in various ecommerce activities throughout the United States and abroad.

5. Over the years I have established several digital properties through third-party social media platforms. In particular, in 2017, I established a YouTube Channel accessible at the URL https://www.youtube.com/@CaitlinV ("YouTube Channel"). As of the date of this Declaration, the YouTube Channel has over 859,000 subscribers, contains over 860 videos, and has garnered over 140 million views. As of the date of this Declaration, 34 of the videos on my YouTube Channel have each been viewed more than 1 million times. I also have established other social media pages that have garnered a considerable following.

6. In 2022, I was hired by a production company to host the Discovery Plus reality television show entitled *Good Sex* ("Reality Show"). As part of the Reality Show, I provided coaching to real people to help them resolve challenges relating to sex and intimacy that had arisen in their lives.

7. The Reality Show further enhanced my exposure as an authority in the sexual health space, which has allowed for further publicity within the industry. For example, I was featured in the cover story of the Fall 2024 issue of *Sexual Health* magazine ("Cover Story"). Within the Cover Story, I was interviewed about my participation in the Reality Show as well as about other aspects of my business.

8. Over the years I have been able to leverage my substantial following within the sexual health space into opportunities to serve as an ambassador for various brands, including providers of adult-oriented goods and services.

9. I earn my livelihood within the sexual health space, including without limitation through the commercial use of my name, voice, signature, photograph, image, likeness, distinctive appearance, gestures, and mannerisms (collectively, "Personality"), as well as by granting rights to third parties to use my Personality and/or content.

10. In July 2024, I was contacted by some of my followers, who informed me that various aspects of my Personality (including my photograph, image, likeness, and distinctive appearance) were being used in multiple online advertisements for Defendants' adult-oriented wellness products ("Defendants' Products"). My followers wanted to know whether I had actually endorsed Defendants' Products.

11. I have not at any point consented to the use of my Personality to market Defendants' Products, nor have I in any way endorsed Defendants' Products. In fact, I would never endorse Defendants' Products due to the dubious statements made by Defendants in the advertisements and on their websites about the outlandish purported benefits of Defendants' Products.

12. After the filing of this suit, in August and September 2024, I discovered two additional products being advertised in similar online marketing campaigns with the unauthorized uses of my Personality. While the products were different from the ones initially being advertised, my investigation revealed that affiliated parties were involved.

13. In October and November 2024, additional similar online marketing campaigns were discovered for two more products in the sexual wellness space, including products that were sold through the same point-of-sale websites controlled by Defendants or parties affiliated with Defendants (collectively, "Point-of-Sale Sites") as those discovered earlier.

14. These online marketing campaigns that misappropriate my Personality (collectively, "Infringing Ads") all follow a similar pattern. They use my photograph, image, likeness, and distinctive appearance alongside a picture of Defendants' Products with a caption containing a call to action, such as the phrase "Try This!" The Infringing Ads all have an "Order Now" button, clicking on which redirects the user to Defendants' Point-of-Sale Sites, from which consumers can purchase Defendants' Products.

15. As part of my investigation, I directed my representatives (who are residents of northwest Indiana) to purchase Defendants' Products. Specifically, at my instruction, my representatives clicked on the "Order Now" button in the Infringing Ads, after which they were redirected to various Point-of-Sale Sites. Immediately after being redirected to the Point-of-Sale Sites from the Infringing Ads, my representatives, while located in northwest Indiana, proceeded to purchase Defendants' Products from the Point-of-Sale Sites using U.S.-based electronic payment processors. My representatives ordered Defendants' Products into northwest Indiana and, in each instance, the purchased products were received by my representatives in northwest Indiana.

16. The purchases and associated investigative efforts revealed that a single merchant sold at least four of the Defendants' Products. Meanwhile, another one of the Defendants' Products was determined to be sold by an entity affiliated with the other merchant of Defendants' Products. Specifically, in addition to following the same modus operandi with respect to the Infringing Ads, the second entity was revealed to have access to and control the same domain(s) and email address(es).

17. Upon information and belief, Defendants have engaged in fraudulent conduct when registering their digital properties by providing false, misleading, and/or incomplete information to the relevant third-party platforms. Upon information and belief, certain Defendants have anonymously registered and maintained their digital properties to prevent discovery of their true identities and the scope of their ecommerce operations.

18. Upon information and belief, Defendants regularly register or acquire new digital properties and seller aliases for the purpose of offering for sale and selling Defendants' Products. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

19. Even though Defendants operate under multiple fictitious aliases, the Infringing Ads and the Point-of-Sale Sites often share unique identifiers, such as templates with common design elements that intentionally omit any meaningful contact information or other information for identifying Defendants or other Point-of-Sale Sites they operate or use. Ecommerce stores operating under at the Point-of-Sale Sites include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.

20. Upon information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

21. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operating despite my enforcement efforts.

22. Upon information and belief, Defendants maintain offshore bank accounts and regularly move funds from their ecommerce financial and payment accounts to offshore bank accounts outside the jurisdiction of this Court to allow them to avoid payment of any monetary judgment awarded to a rightsholder, such as myself.

23. Upon information and belief, Defendants proceed to initiate digital marketing campaigns for their various products by misappropriating photographs, likenesses, images, and distinctive appearances of authorities in the sexual health space (including mine) to lend unwarranted credibility to Defendants' Products.

24. Monetary damages cannot adequately compensate me for ongoing infringement because monetary damages fail to address the pervasive damage to my control over my rights in my Personality and my reputation, associated goodwill, and ability to exploit my Personality. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused by these acts of infringement to my control over my rights in my Personality, my reputation, the goodwill associated therewith, and my ability to exploit my Personality.

25. My business enterprise's goodwill and reputation are irreparably damaged by the making, using, offering for sale, selling, or importing of goods that misappropriate my Personality. Moreover, consumer confidence in my brand is damaged, which can and will result in a loss of future sales and market share. The extent of harm to my brand's reputation and goodwill and the possible diversion of customers due to loss in brand confidence is largely unquantifiable.

26. I am further irreparably harmed by the sale, offering for sale, and other distribution of Defendants' Products through the use of my Personality, because I have no way of controlling the nature and quality of Defendants' Products. Loss of quality control over goods promoted with the use of my Personality result in a loss of control over my business' commercial reputation, which is neither calculable nor precisely compensable.

27. The unauthorized use of my Personality to promote Defendants' Products is likely causing and will continue to cause consumer confusion, which weakens my brand recognition and reputation. Inferior quality products will result in increased skepticism and hesitance by consumers presented with goods and services that I genuinely endorse, resulting in a loss or undermining of my business' reputation and goodwill. Such unauthorized use also will likely cause my sponsors and strategic partners to reconsider their initiatives involving my Personality, or such use will dilute

6

my Personality, such that I will not be able to command as much compensation for the use of my Personality by sponsors and strategic partners.

**28.** I will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this November 8, 2024 at Los Angeles, California.

**/s/ Caitlin V. Neal (with permission)**
Caitlin V. Neal