UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CAITLIN V NEAL,

    Plaintiff,

    v.

OPERATORS OF THE DIGITAL
PROPERTIES SET FORTH IN EXHIBIT 1,

    Defendant.

Case No. 2:24-CV-263-GSL-AZ

## OPINON AND ORDER

On November 8, 2024, Plaintiff filed a Ex Parte Motion for Entry of a Temporary Restraining Order, [DE 14], against the unknown owners and operators of various websites believed to be located in China. This Court has considered the arguments Plaintiff provided at the hearing on November 15, 2024, and has reviewed Plaintiff's brief and its accompanying exhibits. For the reasons below, Plaintiff's Ex Parte Motion for Entry of a Temporary Restraining Order, [DE 14], is DENIED.

## BACKGROUND

Plaintiff is a "renowned sexologist and sexual health and relationship coach." [DE 1, Page 3:8]. Defendants are, allegedly, e-commerce merchants based in China. [DE 1, Page 1:3]. Plaintiff filed this case on July 31, 2024, alleging that Defendants violated the Lanham Act's prohibitions against false endorsement, 15 U.S.C. §§ 1051, et seq., and that Defendants knowingly, willfully, and intentionally violated Ind. Code 32-36-1-0.2, et seq., the Indiana statute against misappropriation of rights of publicity. [DE 1]. On November 6, 2024, service still had not been accomplished as to the Defendants, and the Deputy Clerk of Court informed Plaintiff that if service does not occur by November 21, 2024, the matter would be brought to the

Court's attention and the case would be subject to dismissal. [DE 8]. On November 6, 2024, Plaintiff filed the First Amended Complaint, where Plaintiff added more screenshots of her reality show and cover story. [DE 9]. Plaintiff also reissued summons to Defendants. Two days later, on November 8, 2024, Plaintiff filed an Ex Parte Motion for Entry of a Temporary Restraining Order against Defendants. [DE 14]. Plaintiff also filed a Motion for Electronic Service of Defendants, which was granted. [DE 15; DE 18]. The Court held argument on the Ex Parte Motion for Entry of a Temporary Restraining Order on November 15, 2024.

## DISCUSSION

### I.    Jurisdiction and Venue

In a federal question case, such as this, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 589 (7th Cir. 2021) (citing *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quotation omitted)). Because the Lanham Act does not have a special federal rule for personal jurisdiction, the court must look to the law of Indiana. *See* F.R.C.P. 4(k)(1)(A); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Under Indiana's long-arm statute, Indiana state courts may exercise personal jurisdiction on a number of prescribed bases, as well as "on any basis not inconsistent with the Constitution of this state or the United States." IND. R. TRIAL P. 4.4(A). The Supreme Court of Indiana has held that Indiana's long-arm provision "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). To comport with federal due process, a defendant must maintain "minimum contacts" with the forum state such that "the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'"

*Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). The nature of the defendant's contacts with the forum state determines whether a court has general or specific jurisdiction over the defendants. *King v. Kinsey's Archery Prods.*, 2023 U.S. Dist. LEXIS 173975, *3 (N. D. Ind. Sept. 28, 2023) (citing *Tamburo*, 601.3d 693, 701)).

General jurisdiction permits a federal district court in Indiana to exercise personal jurisdiction over a nonresident defendant regardless of the subject matter of the litigation only when the defendant has "continuous and systematic general business contacts" with Indiana. *Annie Oakley Enters. v. Sunset Tan Corporate & Consulting, LLC*, 703 F. Supp. 2d 881, 887 (N. D. Ind. 2010) (citing *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). The Seventh Circuit explained that "[t]hese contacts must be so extensive to be tantamount to [the nonresident defendant] being constructively present in [Indiana] to such a degree that it would be fundamentally fair to require it to answer in [an Indiana court] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Annie Oakley Enters.*, 703 F. Supp. 2d 881, 887 (citing *Purdue Research Found.*, 338 F.3d at 787)). Here, according to the allegations in the complaint, Defendants are based in China, advertise on websites reaching Indiana, and have fulfilled a handful of orders to Indiana. It would be inconsistent to find that an Indiana court has general jurisdiction over *all* their acts. *Annie Oakley Enters.*, 703 F. Supp. 2d 881, 887 (citing *Purdue Research Found.*, 338 F.3d at 787)) (emphasis added).

On the other hand, an Indiana court may exercise specific jurisdiction over a nonresident defendant if three "essential requirements" are met:

> First, the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Curry*, 949 F.3d at 398 (citing *Lexington Ins. Co. v. Hotai Ins. Co., Ltd*., 938 F.3d 874, 878 (2019)). There is no "special jurisdictional test for Internet-based cases." *Tamburo*, 601 F.3d at 703 n.7. "[W]e think that the traditional due process inquiry ... is not so difficult to apply to cases involving Internet contacts that courts need some sort of easier-to-apply categorical test." *Illinois v. Hemi Grp*. LLC, 622 F.3d 754, 759 (7th Cir. 2010).

Beginning with the first element, purposeful availment exists only when a nonresident defendant has deliberately engaged in significant activities within the forum state or has created continuing obligations between itself and a resident of the forum state. *Annie Oakley Enters., LLC*, 703 F. Supp. 2d 881, 887. Two recent Seventh Circuit cases are instructive. In *Curry*, the court found that allowing customers to order products from a website to the forum, and then carrying out that order, can form the basis of personal jurisdiction. *Curry*, 949 F.3d at 399-400. The defendant company's actions were purposefully directed where it "created an interactive website and explicitly provided that Illinois residents could purchase its products through that website," "arranged for the sale of its products through third-party websites," "sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address," and then, "shipped [the product] to its customers who were in Illinois." *Curry*, 949 F.3d at 399. These contacts were sufficient because "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant

reasonably could foresee that its product would be sold in the forum." *Id*. If the defendant exploits the forum market, it is subject to the jurisdiction of the forum. *Id.*

Similarly, in *NBA*, the court held that through the defendant's online amazon store, the defendant unequivocally asserted a willingness to, and actually did, ship goods to Illinois. *NBA Props. v. HANWJH*, 46 F.4th 614, 624-26 (7th Cir. 2022). When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address, even if it was a single order. *Id.* When assessing purposeful direction, what matters is its structuring of its own activities so as to target the specific market. *NBA Props.* 46 F.4th 614, 625.

Here, Plaintiff alleges that Defendants are based in China and sell various products through their online websites. [DE 14-1, Page 3]. Plaintiff discovered in July, August, September, and October of 2024 that Defendants had initiated online marketing campaigns using aspects of Plaintiff's likeness and personality in at least seventeen ads on social media. [DE 12]. Pressing the "Order Now" button on the advertisement redirects internet users to one of several Point-of-Sale Sites, through which consumers, including Indiana residents, can purchase Defendants' Products. *Id.* Plaintiff's agent clicked the advertisement and was directed to a website for purchase, where the agent did in fact purchase at least one of the products from the infringing advertisements. [DE 14-3]. Defendants "created an interactive website and explicitly provided that [Indiana] residents could purchase its products through that website," "arranged for the sale of its products through third-party websites," "sent written confirmation to the [Indiana] customers acknowledging their sale and including their [Indiana] shipping address," and then, "shipped [the product] to its customers who were in [Indiana]." [DE 3; DE 14-3]. Under both *Curry* and *NBA*, this is sufficient to satisfy the personal availment prong of the specific personal jurisdiction analysis. *See Curry,* 949 F.3d at 399-400; *see also NBA Props.,* 46 F.4th 614, 625.

Moving to the next element, "[t]he proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be 'suit-related.'" *NBA Props*, 46 F.4th 614, 625 (citing *Curry*, 949 F.3d at 400 (emphasis in original)) (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). This requirement is met when direct sales from the defendant in the forum state involve the infringing product. *Curry*, 949 F.3d at 401-02. Here, because Plaintiffs brought suit over the sale and shipment of the product from the infringing advertisement, the relatedness prong is also satisfied.

Finally, the Court must examine whether subjecting Defendants to jurisdiction in Indiana offends traditional notions of fair play and substantial justice. Courts consider the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies. *Hemi*, 622 F.3d at 759 (cleaned up) (quoting *Purdue Rsch. Found.*, 338 F.3d at 781). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985).

In *Curry*, the Seventh Circuit held that there was no unfairness in making a seller defend a suit in a state where it structured its business to "easily serve the state's consumers." 949 F.3d at 402. "There is no unfairness in requiring a defendant to defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Id.* Here, Plaintiff may have its principal places of business elsewhere, but nevertheless has an interest in ensuring her personality and likeness is protected against confusion in the local

market. Indiana also has an interest in protecting its consumers from purchasing allegedly fraudulent merchandise. For those reasons, this Court finds that subjecting Defendants to jurisdiction in Indiana does not offend traditional notions of fair play and substantial justice. As a result, this Court has specific personal jurisdiction over Defendants in this matter.

## II.    Temporary Restraining Order

An ex parte temporary restraining order ("TRO") is an extraordinary remedy which will not be granted unless the movant clearly shows that such relief is warranted. *Fort Wayne Women's Health Organ. v. Brane*, 734 F. Supp. 849, 850 (N. D. Ind. 1990). Rule 65 Paragraph (b) of the Federal Rules of Civil Procedure governs ex parte temporary restraining orders and states that one may be granted without written or oral notice to the adverse party or his attorney only if…

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

F.R.C.P. 65(b). The standards for issuing a temporary restraining order are analogous to the standard for preliminary injunctive relief. *Levas v. Village of Antioch*, 684 F.2d 446, 448 (7th Cir. 1982). The court may grant a TRO if the movant: (1) has some likelihood of succeeding on the merits, (2) has no adequate remedy at law, and (3) will suffer irreparable harm if the order is denied. *Baskin v. Bogan*, 12 F. Supp. 3d 1137, 1140 (S. D. Ind. 2014); *see Abott Labs. v. Mead Johnson & Co*., 971 F.2d 6, 11 (7th Cir. 1992).

Here, Plaintiff requests (1) entry of an ex parte temporary restraining order, including an injunction against Defendants to enjoin the unauthorized use of protectable aspects of Plaintiff's

personality and identity for purposes of advertising and promoting the sale and distribution of Defendants' products, (2) imposition of a temporary asset restraint to ensure availability of equitable relief, and (3) expedited discovery. [DE 14].

In his affidavit, Plaintiff's counsel explains why he intentionally chose not to alert Defendants to his request for a TRO.

3. In my experience helping combat online piracy, counterfeiting, and false advertising over the last five years, I have observed infringers using a variety of tactics to evade enforcement efforts. Specifically, infringers like the Defendants in the present case will often register new domains and online marketplace accounts under new aliases once they receive notice of a lawsuit, or otherwise utilize a plethora of accounts to minimize the risk that the removal or deactivation of one storefront due to their infringing activities will stall their entire operation.

4. In my experience, once notice of a lawsuit is received, merchants who misappropriate intellectual property or aspects of an individual's personality (like the Defendants in the present case) move funds from their U.S.-based accounts (e.g., PayPal) to offshore bank accounts outside the jurisdiction of this Court.

5. For these reasons, in the absence of an ex parte Order, Defendants in the interest of shielding their assets could and likely would modify payment account registration data and content and to shuffle any assets from accounts in U.S.-based financial institutions (e.g., PayPal), to offshore accounts.

[DE 14-3]. The Court finds these are sufficient reasons for Plaintiff not to provide notice to Defendant. The Court will now consider whether Plaintiff has sufficiently met elements required for the Court to issue an injunction.

Plaintiff has some likelihood of succeeding on the merits, because there is direct evidence Defendants may have violated the law by using Plaintiff's likeness and personality for advertisements Plaintiff is unaffiliated with, and in doing so, may harm Plaintiff's business. However, while one adequate remedy at law would be to enjoin Defendants' behavior, another adequate remedy at law would be to bring claims under the Lanham Act, as Plaintiff has done here. *See* [DE 1]. Finally, Plaintiff may suffer irreparable harm if Defendants are not enjoined and continue to use her personality and likeness without permission, which dilutes the value of Plaintiff's brand. But, because Plaintiff does not satisfy all three elements required to issue a TRO, this Court cannot issue one.

Even if Plaintiffs were able to meet all three elements, this Court would still be unable to issue a TRO. After all three elements above are met, the court is to consider any irreparable harm to the non-movant and balance it against the harm to the movant. *See Abott Labs*, 971 F.2d 6, 12. The Seventh Circuit uses a sliding scale so "the more likely it is the plaintiff will succeed on the merits, the less balance of irreparable harm need weigh towards its side." *Baskin v. Bogan*, 12 F. Supp. 3d 1137, 1140 (S. D. Ind. 2014) (citing *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 740 (7th Cir. 2013)).

During the November 15, 2024 hearing, Plaintiff described how a TRO would function in this case. The TRO would be sent to payment platforms, like PayPal, as well as platforms where the infringing advertisements are published, like Meta. The TRO and accompanying notice would direct PayPal, or other such payment platforms, to freeze Defendants' accounts, without

any further investigation and regardless of whether the accounts contained proceeds from the infringing advertisements. Likewise, the TRO and accompanying notice would also direct platforms where the infringing advertisements are published to freeze Defendants' accounts, without any further investigation and regardless of whether the specific account had actually used the infringing advertisement.

Here, the identities of the Defendants remain unknown, as do the size and scope of the non-infringing versus the infringing activities. As a result, the risk of overreach is sizeable. During the hearing, the Court asked Plaintiff if it were possible that non-infringing behavior would be enjoined if this Court were to issue an injunction. According to Plaintiff, all accounts held by Defendants would be frozen in their entirety, and Defendants would be unable to (1) promote products even using non-infringing advertisements, or (2) access any of the money in their accounts, regardless of whether the account contained sale proceeds from the infringing advertisements. Due to the many unknowns of this case, including the Defendants' identities, the size of the Defendants' companies, and the scale of non-infringing sales versus infringing sales, this Court cannot accurately balance the competing interests to determine whether harm to the Defendant outweighs harm to the Plaintiff. As a result, the TRO that Plaintiff requests cannot be issued here.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for a TRO is denied.

SO ORDERED.

ENTERED: November 26, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court