IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

| | |
|---|---|
| Caitlin V. Neal,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Operators of the Digital Properties Set Forth in Exhibit 1,<br><br>　　　　　　　　Defendants. | Case No: 2:24-cv-00263-GSL-AZ<br><br>Dist. Judge Gretchen S. Lund<br><br>Mag. Judge Abizer Zanzi |

**MOTION FOR RECONSIDERATION OF DENIAL OF PLAINTIFF'S *EX PARTE*
MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Caitlin V. Neal ("Plaintiff" or "Neal"), by her counsel, respectfully submits this motion for reconsideration of the Court's denial of Plaintiff's *ex parte* motion seeking a temporary restraining order, including a temporary asset restraint, and for expedited discovery ("Motion for TRO"). [DE 14]. The Court's reasoning for the denial of the Motion for TRO is set forth in the Court's memorandum opinion and order issued on November 26, 2024 ("Opinion"). [DE 20].

**RELEVANT PROCEDURAL BACKGROUND**

Plaintiff filed the original complaint ("Complaint") in this case on July 31, 2024. In the immediate aftermath of filing the Complaint, Plaintiff realized that the scope of Defendants' infringements was much broader than initially anticipated, as a result of which Plaintiff proceeded to gather additional evidence regarding Defendants' infringements and filed a First Amended Complaint ("FAC") on November 6, 2024. [DE 9]. Plaintiff then proceeded to file the Motion for TRO on November 8, 2024. [DE 14]. An in-person hearing was held on November 15, 2024 ("Hearing") [DE 19], and on November 26, 2024, the Court issued the Opinion, denying the Motion for TRO. [DE 20].

In the Opinion, the Court acknowledged that the Court could assert personal jurisdiction over Defendants. [DE 20 at 2–7]. The Court also acknowledged that Plaintiff had sufficient reasons for seeking relief *ex parte*. *Id*. at 8–9. Further, the Court determined that Plaintiff had some likelihood of succeeding on the merits and that Plaintiff may suffer irreparable harm without an injunction. *Id*. at 9. The Court denied the Motion for TRO, however, because (1) Plaintiff purportedly has an adequate remedy at law, and (2) the Court deemed there to be a high risk of potential overreach in the breadth of the temporary asset freeze. *Id*. at 9–10.

Upon the Court's issuance of the Order and denial of Plaintiff's Motion for TRO, Plaintiff proceeded to file an *Ex Parte* Motion for Expedited Discovery ("Motion for Expedited Discovery"). [DE 21]. The goal of the Motion for Expedited Discovery is to help Plaintiff gain additional information that may facilitate the Court's comfort in granting temporary injunctive relief. At the same time, Plaintiff believes that the Court has committed manifest error in denying the Motion for TRO and that Plaintiff's motion for reconsideration has merit. If the Court deems it appropriate to grant Plaintiff's motion for reconsideration, such determination will render the Motion for Expedited Discovery moot, as Plaintiff's Motion for TRO already included a request for expedited discovery that the Court did not address in the Opinion.

### LEGAL STANDARD FOR MOTIONS FOR RECONSIDERATION

Rule 54(b) governs motions for reconsideration before a final judgment has been entered in a case. *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). Under Rule 54(b), "any order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." FED. R. CIV. P. 54(b); *Galvan*, 678 F.3d at 587 n.3. Courts may grant motions for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit*

2

*Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "[M]anifest error is not demonstrated by the disappointment of the losing party," but rather by the "misapplication or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation and citation omitted). The rule allows courts to correct their own errors and avoid unnecessary appellate procedures. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012); *see also United States v. Ibarra*, 502 U.S. 1, 5 (1991) (*per curiam*) (motions for reconsideration give district courts "the opportunity to correct their own alleged errors, and allowing them to do so prevents unnecessary burdens being placed on the courts of appeals.").

## ARGUMENT

### I. The Court manifestly erred in concluding that Plaintiff has any adequate remedy at law.

In the Opinion, the Court treats the requirement for irreparable harm and the requirement for inadequate remedy at law as two separate elements for preliminary injunctive relief. [DE 20 at 7]. As a result, the Court reached the conclusion that, while Plaintiff had sufficiently shown that Plaintiff would be irreparably harmed in the absence of an injunction, Plaintiff nevertheless had an adequate remedy at law, thereby foreclosing the availability of preliminary injunctive relief. *Id*. at 9. Specifically, the Court determined that Plaintiff's "ability to bring claims under the Lanham Act, as Plaintiff has done here," was an adequate alternative to injunctive relief. *Id*.

The Court's determination is circular in nature and contradicts both statutory and common law. True, the Lanham Act allows for monetary damages, but the statute also includes dynamics for issuance of temporary and preliminary injunctive relief. *See* 15 U.S.C. § 1116(a). In fact, the appropriateness of such relief is reinforced through an explicit rebuttable presumption of irreparable harm, including for false endorsement claims. *See id*. Plaintiff expressly requested injunctive relief in the Complaint and in the FAC. [DE 1 at 8, ¶ 5; DE 9 at 9, ¶ 5]. Plaintiff also

3

addressed the relevant statutory basis for the injunctive relief in Plaintiff's memorandum in support of the Motion for TRO. [DE 14-1 at 12–14].

While there has been considerable inconsistency (including within the Seventh Circuit) as to whether irreparable harm and availability of adequate relief at law are separate elements or one and the same, the potential of a plaintiff suffering irreparable harm in the interim can serve as the basis for preliminary injunctive relief. *See, generally*, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 385–86 (7th Cir. 1984). Preliminary injunctive relief is particularly appropriate in Lanham Act cases such as this one, considering that the injuries in question relate to consumer goodwill, which plaintiffs "continue[] to suffer in the absence of an injunction." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002), *as amended* (Oct. 18, 2002). The Seventh Circuit has repeatedly determined that such damage to goodwill constitutes "irreparable harm <u>for which [plaintiff] ha[s] no remedy</u>." *Id*. (emphasis added); *see also Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 17 (7th Cir. 1992) (vacating denial of preliminary injunctive relief, in relevant part because the "practical impossibility" of quantifying the harms suffered by a Lanham Act plaintiff "would render monetary relief inadequate," therefore rendering "injuries irreparable"); *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("We have clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has <u>no adequate legal remedy</u>.") (emphasis added). To be considered inadequate, a remedy does not have to be "wholly ineffectual," but rather, it "must be seriously deficient as compared to the harm suffered." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021).

The Court acknowledged in the Opinion that "Plaintiff may suffer irreparable harm if Defendants are not enjoined and continue to use her personality and likeness without permission,

which dilutes the value of Plaintiff's brand." [DE 20 at 9]. This is not just a theoretical possibility. The proliferation of infringing ad campaigns launched by Defendants after the filing of the Complaint shows that the initiation of Lanham Act claims does not by itself prevent irreparable harm to Plaintiff's brand during the pendency of this litigation. [*Compare* DE 5, *with* DE 12]. Further, as Plaintiff's counsel mentioned at the Hearing, at least one additional infringing campaign was started by Defendants after the filing of the FAC and the Motion for TRO. (*See* Exhibit 1, Screenshot of Infringing Ad Launched on November 13, 2024).[1] The existence of such reputation-based irreparable harm in the immediate term is exactly the reason for why there is no adequate remedy at law, and why the Court committed manifest error in ruling to the contrary.

**II.     As part of the balancing of equities, the Court committed manifest errors by (1) not assessing the degree of likelihood of Plaintiff's success on the merits and (2) accounting for Defendants' potential revenues from non-infringing activities.**

The Court stated that it would also be unable to issue a TRO in this case because the Court did not have sufficient information to "accurately balance the competing interests to determine whether harm to the Defendant outweighs harm to the Plaintiff." [DE 20 at 9–10]. Purportedly implementing the Seventh Circuit's "sliding scale" approach for balancing equities, the Court stated that it viewed "the risk of overreach [as] sizeable" because there was no information about "the size and scope of the non-infringing versus the infringing activities." *Id*. at 10. The Court's approach is flawed in at least two ways.

***First***, the Court explained that "[t]he Seventh Circuit uses a sliding scale so the more likely it is the plaintiff will succeed on the merits, the less balance of irreparable harm need weigh toward its side." *Id*. at 9 (internal quotation marks omitted). The Court did not, however, engage in any

---

[1] Plaintiff is filing Exhibit 1 under seal for the same reasons as prior sealed filings of screenshots evidencing Defendants' infringements. [*See* DE 5; DE 12]. The Court previously granted Plaintiff's Motion for Leave to File Under Seal. [DE 19].

5

meaningful analysis to determine the <u>degree</u> of the likelihood that Plaintiff would succeed on the merits. *See id*. In fact, the extent of the Court's discussion of the issue consisted of an affirmative acknowledgment that "Plaintiff has some likelihood of succeeding on the merits, because there is direct evidence Defendants may have violated the law by using Plaintiff's likeness and personality for advertisements Plaintiff is unaffiliated with, and in doing so, may harm Plaintiff's business." *Id*. For all of the reasons cited in support of the Motion for TRO and at the Hearing, Plaintiff is <u>extremely likely</u> to succeed on the merits. [*See* DE 14-1 at 7–10]. The Court did not identify any fact that would serve to introduce any possibility that Plaintiff might fail to do so. Therefore, using the sliding scale approach referenced by the Court, the balance of irreparable harms would hardly need to tip toward Plaintiff at all for temporary injunctive relief to be granted.[2] The Court misapplied the sliding scale approach by not assessing the strength of Plaintiff's claims.

***Second***, the Court's concern for the impact of an asset freeze on Defendants' proceeds from non-infringing activities contradicts both the Lanham Act and controlling precedent. As briefly discussed at the Hearing, Plaintiff's <u>sole obligation</u> in seeking profit-based equitable relief under the Lanham Act is to prove Defendants' gross sales. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; <u>defendant must prove **all elements** of cost or deduction claimed</u>.") (emphasis added). In interpreting this provision of the

---

[2] In discussing the practical dynamics of an asset freeze, the Court also did not consider the temporary nature of the injunctive relief being sought in the Motion for TRO. A temporary restraining order may be granted for a maximum period of 14 days. FED. R. CIV. P. 65(b)(2). While the Court may, for good cause, allow for a single extension of a TRO for an additional 14-day period, the Plaintiff will have to move to convert a TRO into a preliminary injunction **at most** within 28 days of the initial entry of a TRO. *See id*. And, unlike the TRO (which may be granted on an *ex parte* basis, as the Court has already acknowledged would be appropriate in this case), Defendants must be provided with notice of a motion for preliminary injunction. FED. R. CIV. P. 65(a)(1). As a result, either the basis for the asset freeze would expire after four weeks, <u>or</u> Defendants would have an opportunity to appear and provide any relevant information for dissolution of the injunction (or to support a reduction in the scope of the asset freeze). To the extent that the sliding scale approach requires Plaintiff to provide additional justification as to why the balance of equities tips in Plaintiff's favor, the Court should take the temporal limitations of the TRO into account.

Lanham Act, the Seventh Circuit has found that a district court commits error when it assumes "that it had to segregate [defendant's] legitimate revenues from those that [defendant] derived through its infringement." *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008), *as amended* (Sept. 16, 2008). Similarly, it is erroneous for a court to assume "that [plaintiff] had to bear the risk of uncertainty about the proper characterization of the revenues." *Id*. While the impossibility of isolating the profits attributable to infringement may create a windfall for a plaintiff, "to hold otherwise would give the windfall to the wrongdoer." *Id*. (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942)). By denying the Motion for TRO due to concerns about the scope of non-infringing activity, the Court has seemingly shifted the burden of proving Defendants' deductible expenses onto Plaintiff, creating a windfall for Defendants in the process. Thus, the Court's consideration of Defendants' potential non-infringing activities also qualifies as manifest error.

## **CONCLUSION**

The Court's manifest errors in finding that Plaintiff has adequate remedy at law and that the balance of harms may weigh in Defendants' favor directly contradict the Lanham Act and Seventh Circuit precedent. The Court should have granted Plaintiff's Motion for TRO in its entirety. Plaintiff respectfully requests that the Court reconsider its Opinion and issue a temporary restraining order substantially in the form previously submitted to the Court by Plaintiff. Additionally, if the Court grants this motion for reconsideration, then the Motion for Expedited Discovery will be rendered moot.

Dated: November 29, 2024

Respectfully submitted,

/s/ Ilya G. Zlatkin
Ilya G. Zlatkin
Zlatkin Cann Entertainment
4245 N. Knox Ave.
Chicago, IL 60641
ilya@zce.law
Ph. (312) 809-8022

*Counsel for Plaintiff*